We are now calling the matter of United States v. Wilson, 19-7048. Mr. Hopkins, we are ready when you are. Thank you, Mayor. Please, the Court. My name is Lance Hopkins. I'm here for Mr. Wilson. We've got one issue today, and we believe, as we briefed, that the District Court erred in calculating the drug quantity. Personal use drug quantity is not counted as relevant conduct in simple distribution cases. While that is the case when there is a conspiracy, not so with simple distribution. Now, the Tenth Circuit has been silent directly on that issue, has not spoken. However, other circuits have, and we've briefed that, including the Eighth Circuit, the Third Circuit, the Seventh, and the Second. When a defendant is convicted of possession with intent and not of a conspiracy, the District Court is not allowed to infer that the entire amount of drugs was for purposes of distribution. Such an inference is not allowed. No such inference is allowed, and the defendant was not under a burden of production to provide specific evidence that part of the 113-gram amount was for personal use. Now, what does the defendant have to do in terms of coming forward with some kind of evidence about his personal use? What's the burden on the defendant? Yes, based on my research, I've seen it come down two ways by the circuits. Some circuits say that the burden is entirely on the government, but the Sixth Circuit, we cite the case of Gil, United States v. Gil, they said the defendant has a burden, except what's interesting about Gil was the defendant did not offer evidence at sentencing to rebut that presumption, but the Sixth Circuit and Gil found out that he rebutted the presumption when he met with police officers during his interrogation. That's similar to what we have here. Mr. Wilson was interrogated after his arrest, and he told the officers that the 113-grams comes entirely from Mr. Wilson's statements. The actual conviction counts are small amounts. He was only caught with, I think, around two grams of methamphetamine when you add it up for both arrests, but he was interrogated by law enforcement. He told them that he bought most of it for personal use, that he sold a portion to supply his drug habit, but that he was primarily a user. It's for personal use, and I would submit to the court that his statement that it was for personal use is consistent with the facts of the case, considering that the actual evidence of conviction, the two counts he was charged with, and that he was actually caught with methamphetamine, I think, totals just a couple of grams, but yet he was held accountable for 113 grams at sentencing based on his statements. In ours, we set a burden that's a little bit more than, you can't just say, I'm an addict, so government proved how much cocaine I didn't ingest, right? What did Mr. Wilson provide here in terms of evidence to quantify his personal use? Well, when he was interviewed, he was arrested and interviewed by law enforcement, and he told them that he purchased 113 grams. 113 grams are based exclusively on his statements, and he stated, he told them that I bought most of it for personal use, and I sold some to supply my drug habit. Our contention is that when he made those statements, that he met his burden of production, and then it shifted back, the burden shifted to the government at that point. We believe that he met his burden of persuasion when he made those statements to law enforcement, that most of the 113 grams was for his own personal use. And I'd like to emphasize, my client was not caught with 113 grams. This 113 gram amount comes exclusively from his own personal statements. If you look at the actual offense conduct, we've got two controlled drug buys of very small amounts. Well, counsel, though, I guess the question is, maybe you can help us understand what happened at sentencing or resentencing. What did the district court, why did the district court disagree with you if you made that argument? Well, what was interesting was, we made that argument, but the, I don't know exactly why they disagreed with me, but when you look at the precense report, or the probation officer's response to our objection, which the court adopted, the probation officer stated that, basically said that he was, he, the probation officer said my client purchased 113 grams, and he said that it was, some of it was for personal use, and some of it was for distribution. The record reflects the court just ignored that distinction. The record reflects the court held him accountable for both personal use and distribution. And when you look at the addendum to the precense report, the precense report addendum actually says that. She says, the defendant admitted to 113 grams of methamphetamine that was either for, it said personal use or distribution, or and or distribution. And that's where we submit that the court erred, because they basically held him accountable for both. And that you can do that with conspiracy, but not with in a possession case. Thank you. Just articulate, I know you've done it in your briefs, and the cases discuss it as well, but I'd like to know in your words, why we should treat conspiracy different from simple possession. Well, you know, the majority of the circuits, what I, what I calculated, a lot of the circuits do, possibly a majority, or around half of them. And, you know, the majority of the circuits, and in my, in my opinion, when you talk about conspiracy, you're talking about far more serious drug offenders, you know, people that are really moving a lot of dope, buying and selling. Not the way the government charges conspiracy. I mean, in order to maybe get flip testimony, but the government usually includes pretty low level people in conspiracy charges. Yeah, that is true. But in this particular situation, my client wasn't charged with the conspiracy. And so I'm no, I just would like in two sentences, why a rule should be the same or different in conspiracy and possession cases. The people that are just guilty of possession are not as big a threat. The generally dealing with smaller drug amounts, drug quantities. But if you, if you focus on quantities, why shouldn't there be some kind of a presumption about whether the amount is a use, a use quantity or a sale quantity? I mean, all the time in, in possession with intent to sell, the government comes up with evidence that we know there's an intent to sell because the quantity involved was exceeds what would be a use quantity. Could the government rely on that kind of a presumption, which comes up? Well, again, I would, in my experience, in my practice, I see conspiracy charges and more serious cases. In most of the possession with intent cases dealing with less serious offenders. For example, my client, two controlled drug buys around a gram each time or less. I think they were both less than a gram. He sold less than a gram both times. I think the combined quantities that he conceded that he had handled were pretty substantial compared to use quantities. Isn't that true? If you just look at the amounts, when he says, when he said, when it totaled 113 grams based on four different occasions, which I think he dealt with a gram each occasion, that, that would, that would be substantial. However, he didn't just say that I, he never said that I bought and sold 113 grams. He said over time, over a period of time, he bought 113 grams and he said that most of the product that he purchased was for his own personal use. Well, I understand you said that. Did he ever quantify what his daily or weekly consumption rate was? He did not. The problem that I have is that the person I have, I have a problem that cuts both ways. The person, the entity that is best able, in fact, only able to put in evidence about how much of a drug possession is for personal use would be the defendant. On the other hand, I have the concern of putting a burden of proof for going forward on the defendant in an element, which is quite decidedly the government's burden approving. So I'm, I'm kind of conflicted between those two values. And anything you have to say about that would be helpful to me. Well, I do understand the court's concern. It does seem to me, in my research, in the circuits, what I think the circuits that have ruled the way that we're arguing, that they understand the part about the government, the shifting the burden of proof to the defendant on something that should be the government's. But I do think in this instance, my client, he did more than just say I bought 113 grams. He specifically stated it, it's in the discovery, and we briefed it, that most, he said that most of what he purchased was for personal use. So he did explicitly state that over half of that 113 grams divided 113 grams by two was for personal use. So he did say that. Is this just up to the defendant? I mean, if we say whatever the defendant says controls, boy, this is going to be a pretty good opportunity for defendants always to say, you know, that's an awful lot of drugs, you might not think I could consume that much, but I can and did and do. Is that then the end of the ballgame for the government? Well, I think what makes this case different is my client was not caught with 113 grams of meth. No, I understand. The only evidence of 113 grams that the government has is my client's, or my client's own statements, my client's own admissions. Would it be different? Would this case be different if your client was caught with 113 grams? Yes. Why would it be different? Well, number one, you've got evidence of 113 grams because he's caught with it. But we have evidence of 113 grams that he's flowed through him. What time period did he say that 113 grams covered? Probably about nine months or a year, something like that. Because he never said he bought 113 grams at once. He bought them in 28 gram instrument increments, 28 grams four times. 28 grams is a pretty good quantity as well, though, isn't it? It is. But what I think is unique about this case, the only evidence the government has that my client bought 113 grams are my client's admissions. And he qualified that admission immediately. He qualified it by saying, I bought 113 grams, but most of it was for personal use. There's no other evidence that my client obtained 113 grams outside of my client's own statements, outside of his own admission. And he qualified that admission by stating that the majority of it, over half, was for personal use and not for distribution. And I think when you combine that with the fact that, when you combine that with the offense conduct, where the guy sold a little less than a gram on two controlled drug buys, that's consistent. Mr. Hopkins, you're out of time. And it looks to me like we've somehow lost Ms. Epperle. Ms. Epperle, are you there? She's here, Your Honor. I just asked her to start her video. Okay, thank you. And you're muted, Ms. Epperle. You may want to unmute before you start arguing. There. Ms. Epperle, were you able to hear the entire argument that- Yes, I was. Yes, I was. Okay. May it please the court, my name is Linda Epperle. I represent the United States. I believe we have three basic points. First, that the court's drug quantity finding was not clearly erroneous. Secondly, we need to bring to this court's attention a case from 2006 where there was some dicta that addressed personal use in terms of intentional distribution. And that's only if the court feels inclined to adopt the majority ruling on the first impression. Just quickly, give me the name of that case in the site that you're referring to. Yes, Your Honor. The Niles case is the one that both parties have talked about from 2017. And in looking at that last night, I found that there was a case entitled Montgomery that is at 468 Fed Third 715 in 2006. And while it could be construed as dicta, that case does indicate, in that case, they were dealing with marijuana plants. And this court made a point that finite quantities of processed narcotics like these would be here might not be part of an underlying  drug. So, we would argue that that Montgomery case is not controlling. Certainly, this court has not followed it as the Niles case indicates. But in all candor, I felt I should bring it to the court's attention. Will you please file a 28-J letter? Yes, Your Honor. We would urge the court instead to follow the reasoning of the Frazier dissent, which basically found that where a person is buying distribution and personal drugs at the same time, that's one indivisible act. I might start with the court's question about whether the court just ignored the evidence of personal use. And that is certainly not the case on this record. The court had seen this defendant before in this case. He was sentenced as a career offender, I believe, or an on-career criminal. And that was overturned. So, we've actually been there on a resentencing. And in that prior sentence, which is included in this record, the court found, it's included in this record at pages 106 and 107, the court in that prior hearing found that the defendant, after waiving his rights, had admitted to the agent to purchasing four ounces of meth for further distribution. The court found that the defendant's assertions through his habit does not mitigate his purchase of four ounces for distribution. He's not charged with, he's charged with simple possession in this case, right? With intent to distribute. Right. If he, when he bought it, if his intent was to ingest it, then it wasn't an intent to distribute it. So, I mean, isn't it rational that where the two are in conflict, that you've got to separate out how much he intended to distribute from how much he intended to personally use? Yes. I think that that's rational. I think that the court here used clear evidence to make those initial determinations about the 113 grams, and then the 27.5 grams to Lori Walker. And then the court was left with this statement that my reading of the transcripts is that some was for personal use. I think it's the most. I'm not sure where the most came from. I've looked and all I have seen so far is some. I could be wrong. But even if we accepted what counsel just said and opposing counsel just said and say 50 percent of it was for personal use, that would still leave, out of the 113 grams, 56 grams that were for distribution. And as long as we are at least 50 but not more than, you know, 200, then the sentencing category here does not change. Well, the category might change, but it might affect the court's sentence within that category or whether to depart. I mean, that's a very big swing. It still stays within the... It does. I had a question. Oh, I just wanted to follow up then. Who has the burden to come forward for some allocation of percentages? I mean, we're dealing with a description of most or some or a little bit or, you know, that's just not very helpful, I think. And I'm wondering who you think has the burden to come forward with more specifics. I believe that the burden, according to the Seventh Circuit in Wise, which this court cited in the Ashe decision, there's a suggestion without holding that when a defendant buys drugs for both purposes, he has some burden of producing evidence about the amount he consumed. And Judge McHugh leaned toward this earlier in indicating, I'm not an addict, so prove how much of the cocaine I bought and kept for my personal use. But in Ashe, if you look at that decision, yes, it cites that Seventh Circuit language, but it goes on and it accepts as enough from the defendant to say approximately half. And that's all the defendant says, and we held that that's enough for the government then to have some burden to disprove that or to carry the burden of persuasion as opposed to production that he consumed the quantity that he bought for sale, the quantity that they're charging. Right. I mean, approximately half isn't particularly better than most, is it? Approximately half is much better than most. Okay. Particularly in this case where the base offense level does not change if half of it goes to personal use. But if most of it goes to personal use, it does change. Most, again, you'd have to define most, which is not extremely helpful, but most to me could go clear up to 98% of it was personal use. That would matter. If it was 51%, it wouldn't in this case. That's just not precise at all. Particularly when you have us here, a defendant who has been previously convicted, we know that he purchased these 113 grams in under 10 months because he had just been released from Bureau of Prison Custody on a prior drug charge. He was also had four cell phones and two digital scales when he was arrested. All of those things. Yeah, you heard the concern I had kind of the comparison that the yin and the yang, that the defendant's the best one has the most evidence to produce on this, most logical. But the obligation to prove quantity for sentencing purposes is the government's. And I have a little trouble, more than a little trouble, putting some kind of a burden on the government. I mean, on the defendant on this issue that is clearly the government's. Now, maybe to the use of a presumption or something like that, it could help. But how do you deal with the, I mean, putting the burden of proof on a defendant on an issue that is clearly the government's obligation? Well, the government does have the obligation to prove quantity. And there was proof here as far as the sum total. The government has an obligation. You can't just get around it saying to prove quantity. You got to look at the statute. The government has the obligation to prove the quantity used for distribution because that's the charge. So they can't just say quantity. The government has to prove distribution intent. Again, I would fall back on the wisdom of this court and the Seventh Circuit that it is completely unworkable for a defendant to simply say, I'm an addict, prove how much I can. You have that on the other side, the unworkability and the fact that defendants, if they could simply deny any of it was for distribution, what do you do? Well, the way you do it is you, the government could say, not true because we've got evidence of sales. You sold a very little. But he admits sales. So that doesn't impeach this particular defendant. Because he says, yeah, I admit I had some sales to support my habit. And we all know, I mean, that doesn't ring implausible to us. The drug addicts get drugs and they do sell part of it in order to support their habit. It's not a man on the moon, green man on the moon argument by any means. There is, the Frazier dissent indicates that there, when a person buys at one time, the distribution and the personal use, that that is all part of one indivisible act. And the court goes one time, this, this, this was for purchases. Yes, but he does not in any way indicate, well, this person, this purchase was personal use. This purchase was not. And the, the Frazier dissent indicates that it's easy to conceive of situations where they might not be done at the same time. If for instance, a defendant indicated, you know, that he had concerns about the quality that his conspiracy or his dealer was giving. So for his personal use, he always kept it separate. That's not what we have here. Ms. Epperle, the quantity here is based on the interrogation of the defendant. Why couldn't the government, why couldn't they ask when they said, how many times did you sell, you buy, how much, why couldn't they just ask more questions? How much of it did you use? And how much of it did you sell? And his answer was some. I'm not sure they ever asked him that. He just volunteered that most of it was for personal use. But I mean, you say that it's unworkable to have to do this, but it's exactly how we got to the quantity he's being charged with here in the first place. It's just a Q and A, ask him. We could ask him. I think that from a defendant's point of view, it might be better for defendants in the long run. If that burden came at the time of sentencing, when he was represented by counsel who had, you know, some ability to put forth proof, either through an affidavit, through having the defendant make a proffer, through the sentencing memorandum, better than having a defendant with just the agent. Here, they may not have believed it was necessary because, number one, he also had, as we stated, digital scales and a cell phone. Number two, they knew that this man had a drug history. And in fact, when he was originally sentenced, he was sentenced as a queer offender where this amount of narcotics was not what drove, you know, his sentence initially. In this particular case, the digital scale and the baggie or two that they found, that's not at all inconsistent with what he said because he admits some sales. Yes. Yes, he does. And we have evidence of at least one of the people he sold to. Her evidence would indicate that at least 27.5 grams were sold. And even under that, if there were resentencing on that, he would still be looking at, you know, a level 18, which is better than the level 12 that I think counsel arrived at. Well, counsel, can I just not let you leave the burden question? So the way, let me just try to rephrase your argument that when you have an instance of personal use and for distribution, the government here said all 113 should go to distribution. And the defendant came back. Well, and I understand this is not timely, but if you look at it from a burden standpoint, the defendant comes back and says, Hey, I said some or most or was for personal use. You're saying that fails his burden at that point, because it's not specific enough. I guess I'm just trying to determine where, where do you think the defendant went wrong? I believe that the defendant had an obligation to indicate some idea of the amount of personal use or half the time, three quarters of the time, on five occasions, some sort of qualifier other than just some of it was personal use, particularly whereas here, and the judge in this sentencing relied upon his ruling in the first sentencing, in which the judge found that what he actually what the defendant actually told that agent was that he purchased those drug amounts for further distribution, leading to the implication that at some point, there may have been other amounts purchased that were for personal use. And we don't have the statement in the record that I know of, but we do have that prior finding from the court that was not challenged during the first appeal. And the court was blind. Did the court rely on that statement? Yes, in the current sentencing, the court said, I rely on my previous findings that I made at the original sentencing in 2018. And again, find by preponderance that the defendant is accountable for four ounces of meth in calculating guidelines. And he did challenge that after the recent. Yes, yes. You've used words like the defendant should do this, that or the other thing. Just help us out. If we agree with you that there is some burden on the defendant, give us the precise legal standard of that burden that you think we should articulate. Is it preponderance? Is it just some indication? Is it just a burden of going forward? What, how would you articulate for us the burden of the defendant? I believe that it would be a burden to go forward. I think that this court has made clear and the government would certainly agree that the government is, are the ones who will carry the ultimate burden at sentencing. The government here proved the ultimate quantity. The defendant said some of it was personal abuse. Well, we, we, the court looks at that in connection with the four cell phones, the two digital scales, the defendant's prior history, and says, based upon what he recalled from the first sentencing and relying on that finding, that the defendant had actually told the agent it was four further. So here the, it go forward. So if we just say the defendant's got the burden to go forward, the defendant says I did. So you're going to have to articulate a standard for us. That's a bit more precise than that. If you're going to prevail. So is it the burden to go forward with concrete volumes or sufficient specificity for the court to make a sentencing decision of drug quantity? That latter articulation might give a little wiggle room of the range within a sentencing guideline. Although even that's a little uncomforting, discomforting, because we all know that even within a range, the court might be influenced how to sentence in that range, depending on quantities, but how exactly would you, it's got to be more than just to go forward to do what? I noticed I'm out of time. Would the court like me to answer? Yes, please answer Judge Ebell's question. Darn, I'll do my best. I believe that there is a burden to go forward. And I believe something similar to what Judge Ebell just mentioned, that there has to be perhaps not a specific number of purchases for personal use, a specific amount, but something that gives the court some guidance for how much the defendant is seeking to exclude. Okay, thank you. And your time is out. Mr. Hopkins, we let Ms. Epperle go over. I'm not sure if you had any time remaining. I had 14 seconds. So we'll give you another two minutes with your 14 seconds because we let her run over. You're muted, Mr. Hopkins. I'm trying to. There you go. Now we can hear you. Okay. What I think is really important about this case is the government had no, the only evidence that government has that my client purchased 113 grams of methamphetamine is my client's own statement. There's nothing independent of that. My client during an interrogation said he purchased 113 grams, but he purchased most of it for personal use and sold some of it to support his government. It's making it sound like he was caught red handed with 113 grams of meth. And then he tried to explain it away. I don't, you've said that several times. I don't understand how that's very relevant to us, whether the evidence of the total purchase amount acquisition amount was finding the drugs or because some confidential informant testified about it, whether it's the defendant's own statement, no matter on any of those three options, once the government has an amount of total drugs that have passed through the defendant's hand, that doesn't satisfy this charge against him, which is possession with the intent to distribute. So I just don't think that that distinction, at least for me, carries much weight. I still need to go and determine how the government has established the second part of the charge, which is for distribution. Well, I think it's important because there's no evidence. The only evidence period that my client obtained 123 grams of methamphetamine or his own statements, the offense conduct, the control drug buys were really small amounts. And if you're going to punish the guy for what he says that he bought, you also have to take into account his statements that as to why he bought it. And it was over a long period of time. He didn't go out and buy 113 grams at once. We're talking about a 10 month period. So I think it's important that if the only evidence the government has that he bought 113 grams or his statements and that was purchased over time, almost a year, how do you punish him for that, but ignore his statements of mitigation, ignore his statements that he bought half of this stuff or more than half of this stuff for personal use, most of it for personal use. And I think it makes sense when you look at the small amounts of the offense conduct, the two control drug buys, the small amounts, the 10 month time period of this 113 grams. I mean, whatever it was. Okay. Well, you are out of time, Mr. Hopkins. And so we will take this matter under advisement. We appreciate your argument today and we will move to our next case. Thank you.